# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO.

APPLE CORPS LIMITED AND SUBAFILMS
LIMITED,

      Plaintiffs,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Apple Corps Limited and Subafilms Limited ("Plaintiffs"), hereby sue Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" (collectively "Defendants"). Defendants are each promoting, selling, offering for sale and/or distributing goods within this district bearing and/or using counterfeits and confusingly similar imitations of Plaintiffs' respective trademarks through various Internet based e-commerce stores operating under the seller names identified on Schedule "A" hereto (the "E-commerce Store Names"). In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.    This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.     Each Defendant is subject to personal jurisdiction in this district, because each Defendant directs business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district, through at least, e-commerce stores accessible and doing business in Florida and operating under their E-commerce Store Names. Alternatively, based on their contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-resident in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

**THE PLAINTIFFS**

4.     Plaintiff, Apple Corps Limited ("Apple Corps"), is an incorporated limited company organized under the laws of the United Kingdom with its principal place of business located in London, United Kingdom. Apple Corps is owned by the former members of The Beatles and, where applicable, their successors and its principal activities are the promotion, marketing, and policing of the products and rights of The Beatles, such as merchandising rights and audio and audio-visual content. Apple Corps owns the exclusive right by assignment from The Beatles to all merchandising rights of the Beatles and all other intangible rights in the name "The Beatles."

2

5.      Plaintiff, Subafilms Limited ("Subafilms"), is an associated company of Apple Corps Limited, with its principal place of business located in London, United Kingdom. Subafilms is owned by Apple Corps, the former members of The Beatles and, where applicable, their successors. Subafilms' principal asset is the rights in respect of the cartoon film made in 1967 called "Yellow Submarine."

6.      Plaintiffs are engaged in the development, manufacture, promotion, distribution, and sale in interstate commerce, throughout the United States, including within this district, of a variety of quality goods, using multiple common law and federally registered trademarks, including those discussed in Paragraphs 17 and 26 below.

7.      Plaintiffs' trademarked goods are advertised, offered for sale, and sold within the State of Florida, including this district. Defendants, through the sale and offer to sell counterfeit and infringing versions of Plaintiffs' respective branded products, are directly, and unfairly, competing with Plaintiffs' economic interests in the United States, including the State of Florida and causing each Plaintiff harm and damage within this jurisdiction.

8.      Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their respective trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' individual trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores.

9.      To combat the indivisible harm caused by the concurrent actions of Defendants, Plaintiffs expend significant resources in connection with trademark enforcement efforts. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms,  has created an environment that requires companies, such as Plaintiffs, to

expend significant resources across a wide spectrum of efforts in order to protect both consumers and themselves from confusion and the erosion of the goodwill connected to Plaintiffs' respective brands.

## THE DEFENDANTS

10.     Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers, warehouses, and/or storage facilities within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of, at least, their Internet based e-commerce stores under the E-commerce Store Names.

11.     Defendants use aliases in connection with the operation of their businesses.

12.     Defendants are the past and/or present controlling force behind the sale of products using counterfeits and infringements of Plaintiffs' trademarks as described herein.

13.     Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale, and selling goods, each bearing and/or using counterfeits and infringements of one or more of Plaintiffs' individual trademarks to consumers within the United States and this district through, at least, the Internet based e-commerce stores using, at least, the E-commerce Store Names, as well as additional e-commerce store aliases not yet known to Plaintiffs. Defendants have purposefully directed some portion of their unlawful activities towards

consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing branded versions of Plaintiffs' goods into the State.

14.     Defendants have registered, established or purchased, and maintained their E-commerce Store Names. Defendants may have engaged in fraudulent conduct with respect to the registration of the E-commerce Store Names by providing false and/or misleading information during the registration or maintenance process related to their respective E-commerce Store Names.

15.     Defendants will likely continue to register or acquire new e-commerce store names or other aliases, as well as related payment accounts, for the purpose of offering for sale and/or selling goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Plaintiffs' trademarks unless enjoined.

16.     Defendants' E-commerce Store Names, associated payment accounts, and any other alias e-commerce store names used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Plaintiffs' respective trademarks are essential components of Defendants' online activities and are the means by which Defendants further their counterfeiting and infringing scheme and cause harm to Plaintiffs. Moreover, Defendants are using Plaintiffs' respective famous names and trademarks to drive Internet consumer traffic to at least one of their e-commerce stores operating under the E-commerce Store Names, thereby increasing the value of the E-commerce Store Names and decreasing the size and value of Plaintiffs' legitimate marketplace at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### Apple Corp's Business and Trademark Rights

17.     Apple Corps is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "BEATLES Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| THE BEATLES | 1,752,120 | February 16, 1993 | IC 025 - Headwear, sweatshirts, t-shirts, shirts. |
| BEATLES | 4,373,956 | July 30, 2013 | IC 018 - Luggage, rucksacks, backpacks, umbrellas; bags, namely, handbags, shoulder bags, all-purpose sports bags, carry-on flight bags, suitcases, school bags, satchels, gym bags, tote bags, textile shopping bags.<br><br>IC 021 – Beverage glassware; statuettes and figurines of ceramic; plates; drinking vessels, namely, glasses, mugs, jugs, and tankards not of precious metal; bottles, namely,  sport bottles sold empty, and vacuum bottles; insulated bottles, namely, thermal insulated bottles and flasks for beverages; cookie jars; coasters other than of paper or of table linen; serving trays not of precious metal; drinking glasses; bottle openers; lunch boxes; shaped cookie cutters; small domestic containers, namely, piggy banks not of metal, salt and pepper shakers, salt and pepper pots not of precious metal; tea cups and saucers; coasters not of paper and other than table linen, namely, coasters made of ceramic tiles for beverages.<br><br>IC 024 - Household linen; bed linen; bed sheets, pillowcases, towels. |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|-----------|---------------------|-------------------|---------------------|
|  |  |  | IC 025 - Footwear and headgear, namely, hats and caps; clothing, namely, shirts, polo shirts, t-shirts, sweatshirts; jackets, coats; scarves; neck-ties; socks; long-sleeved shirts and long sleeved t-shirts; fleece tops; thermal tops; jerseys; tank tops; swim wear; slippers; cloth babies' bibs. |

The BEATLES Marks are used in connection with the manufacture and distribution of quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the BEATLES Marks are attached hereto as Composite Exhibit "1."

18.　　The BEATLES Marks have been extensively and continuously used in interstate commerce to identify and distinguish a variety of quality goods. The BEATLES Marks have been in use by Apple Corps since long before the Defendants' use of counterfeits of the BEATLES Marks.

19.　　The BEATLES Marks are symbols of Apple Corps' quality, reputation and enormous goodwill and have never been abandoned.

20.　　The BEATLES Marks are well known and famous. Apple Corps and its licensees expend substantial resources in developing, advertising, and otherwise promoting the BEATLES Marks. The BEATLES Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

21.　　Further, Apple Corps and its licensees have extensively used, advertised, and promoted the BEATLES Marks in the United States in association with the sale of quality goods. Apple Corps and its licensees expend significant resources promoting the BEATLES Marks and products bearing and/or using the BEATLES Marks on the Internet, and via the official website,

www.thebeatlesstore.com. Apple Corps' prominent use of the BEATLES Marks has further enhanced the BEATLES Marks' recognition and fame with members of the consuming public. In the last few years alone, Apple Corps has experienced substantial sales of its high-quality goods.

22.     The worldwide popularity of the Beatles musical compositions, musical recordings, and the enormous sales of genuine goods bearing and/or using the Beatles' name, have resulted in the widespread recognition of the "Beatles" brand. As a result of Apple Corps' use, promotion and advertisement of the Beatles brand, members of the consuming public readily identify merchandise bearing or sold using the BEATLES Marks as being quality merchandise sponsored and approved by Apple Corps.

23.     Accordingly, the BEATLES Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved substantial secondary meaning among consumers as identifiers of quality goods.

24.     Apple Corps has carefully monitored and policed the use of the BEATLES Marks and has never assigned or licensed the BEATLES Marks to any of the Defendants in this matter.

25.     Genuine goods bearing and/or using the BEATLES Marks are widely legitimately advertised, promoted, and offered for sale by Apple Corps, and its authorized licensees, via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Apple Corps' overall marketing and consumer education efforts. Thus, Apple Corps expends significant resources on Internet marketing and consumer education which allow Apple Corps and its authorized licensees to educate consumers fairly and legitimately about the value associated with the BEATLES Marks and the goods sold thereunder.

**Subafilms' Trademark Rights**

26.     Subafilms is the owner of all rights in and to the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "YELLOW SUBMARINE Mark"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| YELLOW SUBMARINE | 3,328,170 | November 6, 2007 | IC 024 – Household linen; bed linen; bedspreads; bed sheets, pillowcases, towels. IC 025 - Shirts; polo shirts; t-shirts; long-sleeved shirts and long-sleeved t-shirts; sweatshirts; jackets; pullovers; vests; scarves; neck-ties; hats; caps; sock; thermal tops; jerseys; sweaters; tank tops; pajamas; clothing for toddlers, infants and babies namely, one piece garments for infants and toddlers, sleep suits, t-shirts and long-sleeved t-shirts. |

The YELLOW SUBMARINE Mark is used in connection with the manufacture and distribution of quality goods in the classes also identified above. A true and correct copy of the Certificate of Registration for the YELLOW SUBMARINE Mark is attached hereto as Composite Exhibit "2."

27.     The YELLOW SUBMARINE Mark has been extensively and continuously used in interstate commerce to identify and distinguish a variety of quality goods. The YELLOW SUBMARINE Mark has been in use by Subafilms since long before the Defendants' use of counterfeits of the YELLOW SUBMARINE Mark.

28.     The YELLOW SUBMARINE Mark is a symbol of Subafilms' quality, reputation and enormous goodwill and has never been abandoned.

29.     The YELLOW SUBMARINE Mark is well known and famous.  Subafilms and its licensees expend significant resources developing, advertising, and otherwise promoting the

YELLOW SUBMARINE Mark. The YELLOW SUBMARINE Mark qualifies as a famous mark as that term is used in 15 U.S.C. §1125(c)(1).

30. Further, Subafilms and its licensees have extensively used, advertised, and promoted the YELLOW SUBMARINE Mark in the United States in association with the sale of quality goods. Subafilms and its licensees expend significant resources promoting the YELLOW SUBMARINE Mark and products bearing and/or using the YELLOW SUBMARINE Mark, on the Internet via the website, www.thebeatlesstore.com. Subafilms' prominent use of the YELLOW SUBMARINE Mark has further enhanced the YELLOW SUBMARINE Mark's recognition and fame with members of the consuming public.

31. As a result of Subafilms' efforts, members of the consuming public readily identify merchandise bearing or sold using the YELLOW SUBMARINE Mark as being quality merchandise sponsored and approved by Subafilms.

32. Accordingly, the YELLOW SUBMARINE Mark is among the most widely recognized trademarks in the United States, and the trademark has achieved substantial secondary meaning among consumers as an identifier of quality goods.

33. Subafilms has carefully monitored and policed the use of the YELLOW SUBMARINE Mark and has never assigned or licensed the YELLOW SUBMARINE Mark to any of the Defendants in this matter.

34. Genuine goods bearing and/or using the YELLOW SUBMARINE Mark are widely legitimately advertised, promoted, and offered for sale by Subafilms through its authorized licensees via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Subafilms' overall marketing and consumer education efforts. Thus, Subafilms expends significant resources on Internet marketing and consumer

education which allow Subafilms and its authorized licensees to educate consumers fairly and legitimately about the value associated with the YELLOW SUBMARINE Mark and the goods sold thereunder.

**Defendants' Infringing Activities**

35.     Defendants are each promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of the BEATLES Marks and/or YELLOW SUBMARINE Mark (the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under the E-commerce Store Names. Specifically, Defendants are each using the BEATLES Marks and/or YELLOW SUBMARINE Mark (collectively, "Plaintiffs' Marks") to initially attract online consumers and drive them to Defendants' e-commerce stores operating under the E-commerce Store Names. Defendants are each using virtually identical copies of one or more of Plaintiffs' Marks for different quality goods. Plaintiffs have used their respective Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiffs' genuine approved merchandise.

36.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' respective genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine quality goods offered for sale by Plaintiffs despite Defendants' knowledge that they are without authority to use Plaintiffs' Marks. Defendants' actions are likely to cause confusion of consumers who will believe all of Defendants' goods offered for sale in Defendants' e-commerce stores are genuine goods originating from, associated with, and/or approved by Plaintiffs.

37.     Defendants each advertise their e-commerce stores, including their Counterfeit Goods, to the consuming public via at least the Internet based e-commerce stores operating under the E-commerce Store Names. In so doing, Defendants each improperly and unlawfully use one or more of Plaintiffs' Marks without authority.

38.     Defendants are each concurrently employing and benefitting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of one or more of Plaintiffs' Marks. Specifically, Defendants are each using counterfeits and infringements of at least one of Plaintiffs' Marks to make their e-commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both Plaintiffs' and non-Plaintiffs' goods and information online. By their actions, each Defendant is jointly contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Plaintiffs' respective genuine goods. Defendants are each causing individual, concurrent, and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, and (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' Marks.

39.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

40.     At all times relevant hereto, Defendants in this action had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their respective, exclusive rights to

use and license such intellectual property and the goodwill associated therewith.

41.     Defendants' use of Plaintiffs' Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

42.     Defendants are engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' respective goodwill and reputations.

43.     Defendants above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, each Defendant's wrongful conduct is likely to create a false impression and deceive consumers into believing there is a connection or association between Plaintiffs' respective, genuine goods and Defendants' Counterfeit Goods, which there is not.

44.     Given the visibility of Defendants' various e-commerce stores and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Plaintiffs and the overall consumer market in which they operate because of Defendants' concurrent actions.

45.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiffs.

46.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their E-commerce Store Names and any other alias e-commerce store names

being used and/or controlled by them.

47.     Further, each Defendant, upon information and belief, is likely to transfer or secret its assets to avoid payment of any profits awarded to Plaintiffs.

48.     Plaintiffs have no adequate remedy at law.

49.     Plaintiffs are suffering irreparable injury and have suffered substantial damages because of Defendants' unauthorized and wrongful use of Plaintiffs Marks. If each Defendant's counterfeiting and infringing, and unfairly competitive activities are not enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed while each Defendant wrongfully earns a substantial profit.

50.     The harm and damages sustained by Plaintiffs has been directly and proximately caused by each Defendant's wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of its Counterfeit Goods.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

51.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 50 above.

52.     This is an action for trademark counterfeiting and infringement against each Defendant based on its use of counterfeit and confusingly similar imitations of Plaintiffs' Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

53.     Defendants are each promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of Plaintiffs' Marks. Defendants are each continuously infringing and inducing others to infringe Plaintiffs' Marks by using one or more of Plaintiffs' Marks to advertise, promote, sell, and offer

to sell counterfeit and infringing versions of Plaintiffs' branded goods.

54.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

55.     Defendants' individual and concurrent unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to Plaintiffs and are unjustly enriching each Defendant with profits at Plaintiffs' expense.

56.     Each Defendant's above-described unlawful actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' respective rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

57.     Plaintiffs have suffered and will continue to suffer irreparable injury and damages while Defendants are each unjustly profiting due to their above-described activities if Defendants are not enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

58.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 50 above.

59.     Each Defendant's Counterfeit Goods bearing, using, offered for sale, and sold using copies of one or more of Plaintiffs' Marks have been widely advertised and offered for sale throughout the United States via the Internet.

60.     Each Defendant's Counterfeit Goods bearing, offered for sale, and sold using copies of at least one of Plaintiffs' Marks are virtually identical in appearance to Plaintiffs' respective genuine goods. Accordingly, each Defendant's activities are likely to cause confusion among consumers as to at least the origin or sponsorship of its Counterfeit Goods.

61.     Defendants have each used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and design, which tend to falsely describe or represent such goods and have caused such goods to enter commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

62.     Defendants have each authorized infringing uses of at least one of Plaintiffs' Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Some Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

63.     Additionally, each Defendant is simultaneously using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for space within organic and paid search engine and social media results, thereby depriving Plaintiffs of a valuable marketing and educational tool which would otherwise be available to Plaintiffs and reducing the visibility of Plaintiffs' respective, genuine goods on the World Wide Web and across social media platforms.

64.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

65.     Plaintiffs have no adequate remedy at law and have sustained both individual and indivisible injury and damages caused by each Defendant's individual and concurrent conduct. Absent an entry of an injunction by this Court, Plaintiffs will continue to suffer irreparable injury to their goodwill and business reputations, as well as monetary damages, while each Defendant is unjustly profiting.

## COUNT III - COMMON LAW UNFAIR COMPETITION.

66.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 50 above.

67.     This is an action against each Defendant based on its promotion, advertisement, distribution, sale and/or offering for sale of goods using or bearing marks that are virtually identical to one or more of Plaintiffs' Marks in violation of Florida's common law of unfair competition.

68.     Specifically, each Defendant is promoting and otherwise advertising, selling, offering for sale and distributing counterfeit and infringing versions of Plaintiffs' branded goods. Each Defendant is also each using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the Internet.

69.     Each Defendant's infringing activities are likely to cause and are causing confusion, mistake and deception among the consumers as to the origin and quality of that Defendant's e-commerce store as a whole and all products sold therein by its use of Plaintiffs' Marks.

70.     Plaintiffs have no adequate remedy at law and have suffered and will continue to suffer irreparable injury and damages because of each Defendant's individual and concurrent actions while each Defendant is unjustly profiting due to its above-described activities if not enjoined.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

71.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 50 above.

72.     Plaintiffs are the respective owners of all common law rights in and to their respective Plaintiffs' Marks.

73.     This is an action for common law trademark infringement against each Defendant based on its promotion, advertisement, offering for sale, and sale of its Counterfeit Goods using at least one or more of Plaintiffs' Marks.

74.     Specifically, each Defendant is promoting, and otherwise advertising, distributing, offering for sale, and selling goods using and/or bearing infringements of at least one of Plaintiffs' Marks.

75.     Each Defendant's infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of that Defendant's goods bearing and/or using Plaintiffs' Marks.

76.     Plaintiffs have no adequate remedy at law and have suffered and will continue to suffer irreparable injury and damages because of each Defendant's individual and concurrent actions while each Defendant is unjustly profiting due to its above-described activities if not enjoined.

## PRAYER FOR RELIEF

77.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against each Defendant as follows:

a.     Entry of a permanent injunction pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining each Defendant, its agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell counterfeit goods; from infringing, counterfeiting, or diluting Plaintiffs' Marks; from using Plaintiffs' Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade

name or trademark or design that may be calculated to falsely advertise the services or goods of any Defendant as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of any Defendant, are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiffs Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by any Defendant; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent any Defendant's goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs' respective name or trademarks and from otherwise unfairly competing with Plaintiffs.

      b.     Entry of an injunction pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority enjoining each Defendant and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, that Defendant in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of Plaintiffs' Marks.

      c.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiffs' request, those acting in concert or participation as service providers to each Defendant, who have notice of the injunction, cease hosting, facilitating access to, or providing any supporting service to any E-commerce Store Names,

including but not limited to any other alias e-commerce store names through which each Defendant engages in the promotion, offering for sale and/or sale of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

d.       Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiffs' request, any Internet marketplace website operators, administrators, registrars and/or top level domain (TLD) Registry for the E-commerce Store Names and any other alias e-commerce store names being used by each Defendant who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with each Defendant's E-commerce Store Name(s).

e.       Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiffs to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are used by each Defendant in connection with each Defendant's promotion, offering for sale, and/or sale of goods using counterfeits, and/or infringements of Plaintiffs' Marks.

f.       Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Plaintiffs to serve the injunction on the e-commerce store name registrar(s) and/or the privacy protection service(s) for the E-commerce Store Names to disclose to Plaintiffs the true identities and contact information for the registrants of the E-commerce Store Names.

g.       Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon Plaintiffs' request, each Defendants and the top level domain (TLD) Registry for the E-commerce Store Names, and any other e-commerce store names used by each Defendant, or their administrators, including backend registry operators or

administrators, place the E-commerce Store Names on Registry Hold status for the remainder of the registration period for any such e-commerce store names, thus removing them from the TLD zone files which link the E-commerce Store Names, and any other e-commerce store names being used and/or controlled by each Defendant to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of Plaintiffs' Marks, to the IP addresses where the associated e-commerce stores are hosted.

h.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority canceling for the life of the current registration or, at Plaintiffs' election, transferring the E-commerce Store Names and any other e-commerce store names used by each Defendant to engage in their counterfeiting of Plaintiffs' Marks at issue to Plaintiffs' control so they may no longer be used for unlawful purposes.

i.      Entry of an order requiring, upon Plaintiff's request, each Defendant to request in writing permanent termination of any messaging services, E-commerce Store Names, usernames, and social media accounts it owns, operates, or controls on any messaging service, e-commerce marketplace, and social media platform.

j.      Entry of an Order requiring each Defendant to account to and pay Plaintiffs for all profits and damages resulting from that Defendant's trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or, that Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

k.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

l.      Entry of an Order pursuant to15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiffs' request, each Defendant and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify, restrain, and be required to surrender to Plaintiffs all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names, or other alias e-commerce store names used by each Defendant presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

m.      Entry of an Order requiring each Defendant, at Plaintiffs' request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of that Defendant's products, including without limitation, the placement of corrective advertising and providing written notice to the public.

n.      Entry of an award of pre-judgment interest on the judgment amount.

o.      Entry of an Order for any further relief as the Court may deem just and proper.

DATED: December 17, 2025.          Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **s/Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., Suite 130-453

Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud

Attorneys for Plaintiffs

## SCHEDULE "A"

**[This page is the subject of Plaintiffs' Motion to File Under Seal. As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**